McCartney, Adm'x. of Samuel McCartney, et al. v. Alderson, et al.

JULIA A. McCARTNEY, ADMINISTRATRIX OF SAMUEL McCARTNEY, *et al.*, Respondents, *vs.* BENJAMIN A. ALDERSON, *et al.*, Appellants.

1. *Limitations, statute of—Section 7, Wagn. Stat., 917—Prospective.*—Section 7 of the Limitation Act (Wagn. Stat., 917) is prospective in its operation, and has no application to actions commenced, nor to cases where the right of entry accrued, before it was enacted.

## Appeal from St. Charles Circuit Court.

*Theodore Bruere & T. W. Cunningham,* for Appellants.

I. Section 7 of the Limitation Act (Wagn. Stat., 917) evidently excepts from the operation of § 1 the class of cases enumerated in the said § 7. (Wagn. Stat., 896, §§ 2, 5.) Section 7, being incompatible with and repugnant to § 1, so far as grants to public, pious and charitable uses are concerned, restrains and repeals so much of § 1, and such repeal takes effect on the 1st of August, 1866. The common law rule of construction is the same. (Dwar. Const. Stat., 658, 765; Patterson's Dwar., 110, 117; Stockett vs. Bird, 18 Md., 484.) Whether § 7 should be considered as an exception or an amendment, the result would be the same in effect. (Holbrook vs. Nichol, 36 Ill., 161; 27 U. S. Digest, 582; Stirman vs. State, 21 Tex., 734; Fosdick vs. Perroyberg, 14 Ohio St., 472; Cox vs. Davis, 17 Ala., 714; Royce vs. Hurd, 24 Ver., 620; 1 Deane, 620; Covington vs. McNickle, 18 B. Mon., 262.) An amendment to a limitation law retroacts to the date of the original, unless otherwise expressed. (2 Min., 241; U. S. Digest, p. 362.)

*Lackland & Broadhead,* for Respondents.

I. The defendants are barred by the statute of limitations- (School Dir. of St. Charles vs. Goerges, 50 Mo., 194; Abernathy vs. Dennis, 49 Mo., 468; Funkhouser vs. Langkopf, 26 Mo., 453; Aubuchon vs. Ames, 27 Mo., 89; St. Louis University vs. McCune, 28 Mo., 481.)

WAGNER, Judge, delivered the opinion of the court.

This was an action of ejectment to recover a certain lot of ground situated in the city of St. Charles. The lot is one of a series granted by the United States Government to the towns, in which they lie, for school purposes. The plaintiffs showed possession in themselves, and those under whom they claimed, from 1831 continuously down to 1867. This possession was accompanied with a paper title emanating from the trustees of the town. At the last named time the defendants, pretending to derive title from the school board, forcibly entered and took the possession.

It appears that in 1831 one Bellon obtained a lease for the premises from the town authorities for nine hundred and ninety-nine years, and that in 1840 he surrendered this lease, and obtained another one in lieu thereof for the same duration of time. From Bellon the title has regularly descended by a chain of *mesne* conveyances to the plaintiff. By act of Congress, approved June 13th, 1812 (2 Stat. at Large 750, § 2), the lot in question was reserved for the support of schools. By a subsequent act, approved January 27th, 1831 (4 Stat. at Large 435, § 2), the United States relinquished all their right, title and interest in and to the town and village lots, out lots and common field lots, in the State of Missouri, reserved for the support of schools, and enacted, that the same should be sold or disposed of or regulated for said purposes in such manner as might be directed by the Legislature of the State.

In May, 1857, the surveyor general duly certified, that the lot had been regularly surveyed, and designated and set apart to the town of St. Charles for school purposes, in conformity with the provision of the second section of an act of Congress of the 26th of May, 1824, being a supplement to the act of June, 1812.

By an act, approved January 27th, 1837, the Legislature of this State passed a law incorporating the city of St. Charles, the 9th section of which provides, that " all powers heretofore granted to the trustees of said town over or relating to the commons of said town are hereby vested and con-

21—VOL. LIV.

tinued in the board of trustees created by this act, and said board shall have power to manage, sell, lease, or otherwise regulate or dispose of, all lots of ground and all money or property, to which the inhabitants may be entitled, for the benefit of schools," etc.   (Sess. Acts 1836–7, p. 309, § 9.)

A subsequent act was passed and approved February 9th, 1839 (Sess. Acts 1838–9, p. 140, §§ 3, 4), by which it was enacted, that upon the petition of a majority of the taxable inhabitants of any town or village to the County Court of their county, praying to be incorporated for school purposes, that the court might make an order for their incorporation ; and that when such order was made, the inhabitants, within the boundaries designated, should be a body politic and corporate, with power to take, hold and purchase real and personal estate and sell or dispose of the same.

In 1851, the Legislature, by an act amendatory of the charter of the city of St. Charles, vested in the school directors of the city the powers which had previously been exercised by the city authorities.   (Sess. Acts 1851, p. 428, § 2.)

The above are substantially the facts, and the congressional and legislative enactments adduced on the trial.

For the plaintiff the court instructed the jury, that plaintiff could not recover till they showed title by possession, and that by title by possession was meant open, notorious, adverse possession of the property in controversy for a continuous period of ten years under color of title, and that by color of title was meant a deed of record for the property to the plaintiffs or parties under whom they claimed ; and that the possession of a part of a lot or tract of land under a deed or lease, calling for the whole lot, was possession of the whole lot, and if the jury believed from the evidence, that a house was on the lot described in the plaintiffs' deeds and conveyances, and that the plaintiffs, and those under whom they claim, were by themselves, or tenants, in the possession of said house under deeds or conveyances, calling for the whole lot, piece or parcel of ground, including the part in controversy, then they were in possession of the whole of said lot,

piece or parcel of said ground, called for in the deeds or conveyances, whether the same was inclosed by a fence or not.

The court further instructed the jury, that, under and by virtue of the laws of the United States and of the State of Missouri, the trustees of the town of St. Charles had the power to lease, sell and dispose of, all lots of ground, to which the inhabitants of said town were entitled, for the benefit of schools, and if they believed from the evidence, that the lot·in question was a lot to which the inhabitants of said town were entitled for the benefit of schools, and that the trustees of the town leased, disposed of, or sold, the same to Bellon in June, 1841, and that the plaintiffs had their title by genuine conveyances, then they should find for the plaintiffs.

At the request of the defendants the court gave an instruction, that the statute of limitations in the present case did not begin to run against the school board of the town of St. Charles, under whom defendants claim, until May 15th, 1857, when said lot was set apart by the surveyor-general of Missouri for school purposes. Defendants further asked the court to instruct, that plaintiffs could not avail themselves of title by possession under color of title, but this the court refused to do. The jury found for plaintiffs.

By the act of Congress of 1812 the lot here in controversy was reserved for the support of common schools, and by the subsequent act the United States relinquished all their right and title to the same, and authorized the State to sell, dispose of, and regulate, it in such manner as the Legislature might provide. After the passage of this last act the Legislature gave the trustees of the town of St. Charles full power and authority to sell and dispose of the lot. Whilst this power was in full existence the trustees did act and dispose of the lot to Bellon, under whom the plaintiffs claim. No subsequent act could impair the rights legally acquired under this power. Before the law of 1839 could become operative, so as to in the least affect the previous provision on the subject, it was necessary that the petition of a majority of the taxable inhabitants of the town should pray to be incorporat

ed for school purposes, and that the County Court should make the order granting the request. The record does not show that this was ever done. For aught that appears, the whole matter, of managing, selling and disposing of, the school property remained in the trustees of the town. The act of 1851, transferring the powers to the school directors, has no bearing on the question, as it is not shown at what time the directors were organized. If they were not organized till after the trustees had conveyed the property, whilst they had the power to convey, then of course the rights of the plaintiffs could not be impaired or affected by their organization.

The plaintiffs then present themselves in court holding the possession, and also claiming under a paper title. We have been unable to see any reasonable objection to the instructions of the court. At the instance of the defendants the court gave an instruction, that the statute of limitations did not begin to run against the school board till the 15th of May, 1857, that being the time at which the surveyor-general certified that the lot was set apart for school purposes. The jury must then have found, that, even under this view of the law taken by the defendants themselves, the plaintiffs were in possession the requisite period of ten years, before they were dispossessed and ousted by the defendants.

But it is contended, that under the 7th section of our Limitation Act (2 Wagn. Stat., 917, § 7), the statute does not run against the school board at all.* This question, however, must be considered as settled and at rest. The section referred to was for the first time enacted in the Revision of 1865, and in the case of School Directors vs. Goerges (50 Mo., 194) we held, that it was prospective in its operation and had no application to actions commenced, nor to causes where the right of entry accrued, before it was enacted. As the plaintiffs' right here accrued before the section had any existence, it cannot be held to apply.

Upon the whole record we have failed to find any substantial error, and the judgment must be affirmed. The other judges concur.