# HENDRICKSON, Appellant, v. GRABLE.

### Division One, June 12, 1900.

**Dower:** ESTATE OF INHERITANCE: TITLE BY POSSESSION: SUSPENDED ENTRY: CONVEYANCE: LIMITATIONS AGAINST STATE. In 1850 the United States conveyed the 40 acres of land to the State and in 1868 the State authorized the county to sell it and make patent to it. In 1854, one Cory entered the land, but, his entry was suspended for the reason that the United States had parted with the title. No patent was ever issued to him, but in 1855 he conveyed to West, and in 1859 West conveyed to Starkey, and Starkey sold it to Hart but did not make him a deed because Hart did not pay all of the purchase price. In 1867 the sheriff sold the land to plaintiff's husband for taxes under a judgment against Hart and West and he deeded it to his daughter, and she sold it to the defendant, who has since been in possession. In after years Starkey made the deed to Hart of the whole quarter section, the defendant paying one-fourth of the money claimed by Starkey from Hart, and thereupon the county patented the forty to defendant. *Held*, that the only right Cory had in the land was a claim to the entrance fee he had paid, and his conveyance was merely an assignment of this claim, and this was all that the sheriff sold to plaintiff's husband, and hence his conveyance did not vest an estate of inheritance in plaintiff's husband and plaintiff's claim for dower in so far as it rests upon a chain of title must fail. *Held*, second, that although prior to August 1, 1866, the statute of limitations ran against the State, yet in order for plaintiff's husband to have acquired title by limitations he must have had adverse, continuous, open and exclusive possession for ten years from some date prior to that date, on which the statute was changed and this being a case at law, the verdict showing that he had no such possession will not be disturbed, since the evidence would not have supported a contrary verdict.

Appeal from Polk Circuit Court.—*Hon. Argus Cox,* Judge.

AFFIRMED.

*Rechow & Pufahl* for appellant.

*John D. Abbe* for respondent.

There is not a particle of evidence that Hendrickson ever went into the possession of this land, or any part of it, before August 1, 1866, nor any evidence of adverse possession of this tract of land by any person at any time. After the first of August, 1866, no limitations could begin to run against the title in the State or county. General Statutes, 1865, sec. 7, p. 746.

MARSHALL, J.—This is an action by the plaintiff, as the widow of David Hendrickson, for the assignment of dower in the southwest quarter of the southwest quarter of section twenty-four, township thirty-three, range twenty-three, in Polk county, of which she alleges that her husband was seized of an estate of inheritance in his lifetime. The answer is a general denial. The judgment of the circuit court was for the defendant and the plaintiff appealed.

This case and the case of this plaintiff against Watson, for the assignment of dower in the southeast quarter of the southwest quarter of the same section, township and range, were tried together, and it was agreed that all the testimony should apply to both cases as far as pertinent. This method of trying the two cases together has resulted in some confusion, and it is somewhat difficult to separate the testimony and apply it to the proper case, as the witnesses do not all testify as to both tracts. The two forty acres lie adjoining and it is somewhat difficult to determine how far the testimony of adverse possession applies to the one or the other tract or to both. In fact, some of the witnesses refer to the whole quar-

ter section and do not attempt to distinguish between any fractional part of it. Both parties agree that the land is a part of the swamp lands patented to the State by the Act of Congress of September 28, 1850, and granted by the State to Polk county by the Acts of 1868 and 1869.

The plaintiff traces title in this way: On the fifteenth of December, 1854, A. B. Cory entered the south half (which includes this land and the Watson land) of the southwest quarter of section twenty-four, township thirty-three, range twenty-three, but this entry was "suspended." No patent was issued to Cory, but on December 27, 1855, he deeded the land to John West. On October 17, 1859, John West deeded it to William Starkey. On the sixteenth of March, 1867, the sheriff sold the land under a judgment against John West and Moses P. Hart, and David Hendrickson became the purchaser. On the seventeenth of December, 1867, the sheriff sold the title of Moses P. Hart (it does not appear that Hart had any title) in the land for taxes, and David Hendrickson became the purchaser. On March 14, 1868, Moses P. Hart deeded the land to David Hendrickson. These conveyances apply to the land here in suit as well as to that involved in the Watson case. On the first of June, 1884, David Hendrickson deeded the land involved in this suit, to his daughter (by a former marriage), Mary Gardner, but the plaintiff did not join in this conveyance or relinquish her dower, and on the eighth of March, 1886, Mary Gardner deeded this land to the defendant Grable.

David Hendrickson died in 1895. The county claimed all the swamp lands—this included—under the acts of 1868 and 1869, and individuals also claimed by virtue of having entered it in the land office as Government land. Sometime after the passage of the Act of 1869, Polk county appointed Snodgrass and Russell to clear up the controversy as to such suspended entries, and to get the United States government to return the entry fee paid to the land office by individuals,

have the individuals turn over the money so returned to the county and the county would then patent the land to the individual who entered it or his assignee. The government of the United States agreed to this, under a ruling of the Secretary of the Interior that the Government had conveyed its title to the State by the Act of 1850, and hence had no title to convey and therefore should refund the entry fees it had received. But it required that the entry man or his assignee should prove a perfect chain of title to the money. In this case Snodgrass and Russell found that the title had passed regularly from Cory down to William Starkey (though how it does not appear in this record except from the testimony of Snodgrass—which contradicts the chain of title shown by the plaintiff as above set out), so they wrote Starkey who lived in Kansas and he said he had sold it to Moses P. Hart, but had never made Hart a deed to it because he had not paid all of the purchase price. In addition to the forty acres here in suit, there were three other forties in the same shape, and Starkey agreed to make a deed to Hart for the one hundred and sixty acres for a consideration of twenty dollars. Grable paid five dollars, the proportionate part, for his forty, and the owners of the other three forties paid the remainder of the twenty dollars; and Starkey made the deed to Hart, but the deed was never delivered to Hart because Grable insisted upon a deed to his part being made to him. At any rate this put the title in Grable sufficiently to satisfy the Government, and Grable relinquished his claim to the Government and the Government repaid the entrance fees, and they were turned over to the county, and the county patented the land in suit to Grable regarding him as the ultimate assignee of Cory.

In this way Grable traces title back of Hendrickson, through Starkey, Hart and West to Cory, and claims that Hendrickson was not seized of an estate of inheritance in the

land during his lifetime, and hence his widow is not entitled to dower.

On the other hand the plaintiff claims title by direct chain from Cory, and while admitting that Cory's entry was "suspended" in 1854, and that neither he nor his assignees ever received a patent from the United States, and apparently conceding that the title to these lands passed under the Act of Congress of September 28, 1850, from the United States to the State of Missouri, and therefore the government of the United States had no title to convey when Cory attempted to enter this as public lands of the United States in 1854, nevertheless claims that Hendrickson acquired title by limitation because he entered upon the possession of the land in 1865 and before August 1, 1866, the date when by the General Statutes the right to acquire title by adverse possession against the State was taken away, and held that possession until his death in 1895, or until he conveyed to his daughter in 1886, it is not clear which, and hence the plaintiff is not entitled to dower.

I.

The plaintiff's claim, so far as it rests upon a chain of title from the United States, must fail for the reasons: first, that by the Act of September 28, 1850, the United States conveyed all its title to the State of Missouri; and, second, because the United States never granted any right or title to Cory, and therefore the subsequent conveyances from Cory down to Hendrickson conveyed no title to Hendrickson, and did not vest in him, during his life, or during the time of his marriage with the plaintiff, an estate of inheritance, in which the plaintiff can claim dower under section 4513, Revised Statutes 1889.

Cory entered the land in 1854, and paid the entrance fee, but his entry was at once "suspended" and therefore he

never got any title from the United States. No patent was ever issued by the United States to him, and it would have been a nullity if it had been issued for the reason that the United States had no title to the land in 1854, but the title was fully vested in the State of Missouri by the Act of September 28, 1850, and this cut out the entry of the land. [Griffith v. Deerfelt, 17 Mo. 31; Kissell v. Board of St. L. School, 16 Mo. 533.] This view the Secretary of the Interior correctly took when the matter was called to his attention. The only right Cory had therefore was to claim the entrance fee he had paid. This was all he conveyed to West, and the sheriff's deed on execution under the judgment against West and Hart, to Hendrickson, was not competent to convey such a claim, and the same is true of the sheriff's deed when the land was sold for taxes against Hart.

There is nothing in the record upon which to base the deed of March 14, 1865, from Hart to Hendrickson. The plaintiff's claim to title does not show any conveyance to Hart at all. The testimony of Snodgrass shows that Starkey had never made a deed to anyone until after Grable acquired the claim. Whether this was before or after Hendrickson's death is not clear from the record, but it certainly was after Hendrickson had conveyed to his daughter Mrs. Gardner and after she had conveyed to Grable. The title to Grable is pieced out by treating the deed from Starkey to Grable as resting on an after-acquired interest in Hart, and through him in Hendrickson and so on down to Grable. But this availeth the plaintiffs nothing, for, as above pointed out, Cory never had an estate or interest in the land of any nature or kind whatsoever and therefore Hendrickson never had any. The title passed from the United States to the State of Missouri, and from the State to Polk county, and from Polk county to Grable. All the other deeds were simply assignments of the right Cory had to recover from the United States the entrance fee he paid in 1854 for the right to

enter land which the government of the United States did not own at that time, and such a right or claim is not an estate of inheritance which will support a claim to dower under the statute.

## II.

The plaintiff, however, claims that Hendrickson acquired title to the land by limitation, and hence she is entitled to dower. She works out her claim in this way: Prior to the taking effect of the General Statutes of 1865, to-wit, on August 1, 1866, the statute of limitations ran against the State. Hendrickson took possession of this land in 1865, or at any rate before August 1, 1866, and held it until his death in January, 1895, or at any rate until he conveyed it to his daughter, Mrs. Gardner, in June, 1884. He held it adversely. Therefore he acquired title by limitation.

It follows from what has already been said herein that Hendrickson had no color or claim of title to the land. It devolved upon the plaintiff herein to show that he had actual, continuous, open, uninterrupted and adverse possession of the land for more than ten years, and that such possession began before August 1, 1866. [Huckshorn v. Hartwig, 81 Mo. 648; Conn. Mut. Life Ins. Co. v. St. Louis, 98 Mo. 422; School Directors v. Goerges, 50 Mo. 194; McCartney v. Alderson, 54 Mo. 320; Miss. Co. v. Vowels, 101 Mo. 225; sec. 7, G. S. 1865, p. 746; sec. 6772, R. S. 1889.] Whether Hendrickson had acquired such a title is a question of fact, and the trial court found it adversely to the plaintiff's claim. This is an action at law and we will not review the finding of fact, unless there is no conflict or unless the judgment is manifestly wrong. [Gannon v. Laclede Gas Co., 145 Mo. loc. cit. 545.]

As herein previously indicated, most of the witnesses do not distinguish between this forty and the Watson forty

lying to the east of it. There is some evidence that the house and improvements were on the Watson forty and nearly all the testimony relates to who occupied that house. To illustrate the conditions developed on the trial: Taylor Hendrickson, a son of plaintiff's husband by his first marriage, says his father went into possession of the Watson forty in 1870, and had a house on it, and about seven acres enclosed. Chas. T. Tucker says a man named Moore occupied the Watson forty in 1857. He was followed by McCall, in 1860, who stayed two years. He was succeeded by the widow Hawkins, in 1865, and she stayed until the spring of 1866. She was followed by John Howell, who stayed a year. He was succeeded by Thomas, and he by Pinkerton in 1869 or 1870. The latter said to the widow's father that he rented from Hendrickson, and this is the first time Hendrickson is mentioned, and this was in 1869 or 1870. Shriner succeeded Pinkerton, and he also said he paid rent to Hendrickson. May followed Shriner. The place was vacant in 1875, except from July to September, and one Threlkill occupied the House and Hendrickson planted some oats. May succeeded Threlkill and stayed a year, but it does not appear how or under whom he claimed. D. W. Grable followed May in 1877, and the record is silent as to how he held. Watson followed Grable, then Engledow followed Watson, and Hudson followed Engledow, and then Watson again got possession. With the exception of what the witness said about Pinkerton and Shriner telling his father that they paid rent to Hendrickson, which was for the years 1870 to 1873 inclusive, and Hendrickson's planting oats in 1875, this record discloses no sort of possession in Hendrickson, and after 1875, until Watson went back into possession in 1878, 1879 or 1880, Hendrickson is not shown to have been in possession, and from the time Watson so regained possession he has been

VOL. 157 mo— 4

in possession ever since, and was in possession at the time of the trial.

If the Watson forty and this forty be treated as one tract, this testimony is wholly insufficient to show that Hendrickson had acquired title by limitation.

On the other hand, Henry Hawkins testified that he and his mother moved onto the Watson place in the fall of 1864, that in the spring of 1865, Hendrickson came out there to fix up the fence; that Hendrickson never exacted any rent from them, but told them to see that his crop was not destroyed and they could have whatever they made; that they stayed until the spring of 1866, and were followed by a man named Howell, who said he got the place from Hendrickson.

Now if it be conceded that this is enough to show, *prima facie,* that Hendrickson had possession through Hawkins, in 1865, or through Howell in 1866, there is a break in the testimony as to his possession from 1866 to 1870, when Pinkerton said he rented from him. And conceding that his possession is shown from 1870 to 1873 inclusive, through Pinkerton and Shriner, and by his having sowed some oats on the place in 1875, there is absolutely no testimony that after 1875, Hendrickson ever had possession, but the testimony is that Watson went into possession the last time in 1878, 1879 or 1880, and he has had possession ever since, and there is no testimony that Watson held possession for Hendrickson or for any one other than himself. The testimony of Bransford Moore is the only testimony in the case that refers to this forty and the Watson forty as separate tracts and he does not know anything about the possession after 1862, and prior to that time he says his father rented the place from West (he refers to both forties as one place) in 1857 for one year; then Edwards rented it from West for one year; then McCall had it two years, but he don't know who he rented from; then Daniels and his mother-in-law, Mrs. Hawkins, had it in 1862. He further says Cory,

Starkey and West were sons-in-law of Hart, and neither of them ever lived on it.

This is all the testimony· in the case as to the possession of Hendrickson and regarding the two forties as one place or as separate tracts it is wholly insufficient to make out even a *prima facie* case of title by limitation in Hendrickson, and therefore the judgment of the trial court is right. This testimony has been thus set out at length not for the purpose of reviewing the finding of facts by the trial court, but for the purpose of showing that there is absolutely no testimony in the case which would entitle the plaintiff to a judgment under any circumstances and therefore it is not a case where this court would interfere with this judgment, as it is for the right party. This makes it unnecessary to consider the instructions given and refused.

The judgment of the circuit court is affirmed. All concur.