The School Directors of the Township of St. Charles, Plaintiffs in Error, *v.* Anna Goerges *et al.*, Defendants in Error.

1. *Limitations — Public schools — Doctrine of* nullum tempus *not applicable.* — An adverse, open and hostile possession for more than ten years before suit brought, is a good defense against a title thereto vesting in the public schools. The doctrine of *nullum tempus* does not apply to any of the subdivisions of the State, such as counties, cities, or other municipal corporations, or to any corporations, private or public. And the act of 1865, excluding lands given to public, pious or charitable use, from the operation of the act of limitations (see Wagn. Stat. 917), has no application to actions commenced nor to cases where the right of entry accrued before the section was enacted.

#### Per Bliss, Judge, dissenting.

2. *Limitation — Public schools — Doctrine of* nullum tempus *applies.*— Ten years' adverse possession is no bar to title vesting in the public schools. The act of 1865, withdrawing lands dedicated to public or charitable use from the operation of the statute (Wagn. Stat. 917, § 7), is not modified or controlled by section 2 of the same act (p. 921), confining the limitation statute to cases where the right of action accrued since its passage. The former provision in effect repeals the latter.

*Error to St. Charles Circuit Court.*

*Th. Bruere*, for plaintiffs in error.

I. In limitations to actions for the recovery of land, the act in force at the time the action is commenced, and not when cause of action accrued, must govern. In the case at bar, at the time the suit was commenced no limitation could be pleaded concerning lands held in trust for the support of schools. (Hauser v. Hoffman, 32 Mo. 334; Billon v. Walsh, 46 Mo. 492.)

II. The statute of limitations, under the laws of 1855, could not commence running until the lot was set apart for the support of schools in 1857, as no title vested in the schools from the United States until then. (Patterson v. Fagan, 38 Mo. 70; Kissell v. St. Louis Public Schools, 16 Mo. 553.) The school directors could not sell until the lot was set apart.

*H. C. Lackland*, for defendants in error.

Unless retrospective effect were given to section 7 of chapter 191, Gen. Stat. 1865 (Wagn. Stat. 917), plaintiffs were barred by the statute of limitations. (Knox v. Cleveland, 13 Wis. 245; Wagn. Stat. 926, § 33.)

ADAMS, Judge, delivered the opinion of the court.

This was an action of ejectment for a lot in St. Charles. The plaintiff claimed title under acts of Congress whereby the lot in controversy was set apart and donated to it for school purposes. The defendants claim title by adverse possession for more than ten years before the commencement of this suit, which they set up in their answer as a defense to this suit. The plaintiff moved to strike out this defense, which motion was overruled and an exception taken to this action of the court. The plaintiff then suffered a nonsuit, with leave to move to set the same aside, and filed a motion for that purpose, alleging as the only cause therefor the action of the court in overruling its motion to strike out the defense of the statute of limitations.

The only question presented by this record is whether an adverse, open and hostile possession for more than ten years before

the commencement of this suit was any defense to a title emanating from the government of the United States, and vesting in plaintiff for school purposes more than ten years before this suit was brought.

The maxim *"nullum tempus occurit regi"* was a prerogative of the king of England, brought to our country with the introduction of the common law, and was applied here to our sovereignties, state and federal, as it had been in England to the king as the sovereignty there. But this rule of the common law does not apply to any of the subdivisions of the State, such as counties, cities, or other municipal corporations, or to any corporations, private or public; and unless such corporations are excepted from the statute of limitations, they are comprehended within it under the general term "persons." (See County of St. Charles v. Powell, 22 Mo. 525.)

By the practice act of 1849, article II, section 10, the State was expressly named as being within the limitation of personal actions. The limitation law of 1857, which was a re-enactment of the act found in the revision of 1855 without an enacting clause, extended the limitation above referred to to real as well as personal actions. But in the revision of 1865 (Wagn. Stat., ch. 191, p. 917, § 7) it is declared that "nothing contained in any statute of limitation shall extend to any lands given, granted, sequestered, or appropriated to any public, pious, or charitable use, or to any lands belonging to this State."

It is contended here that this section stopped the running of the statute so far as the rights of the plaintiffs are concerned. It will be observed, however, that this section is prospective in its operation, and does not apply to actions commenced nor to cases where the right of entry had accrued before this section was enacted. (See section 32 of same law, Wagn. Stat. 921.) This section declares that " the provisions of this chapter (191) shall not apply to any actions commenced nor to any cases where the right of action or of entry shall have accrued before the time when this chapter takes effect, but the same shall remain subject to the laws then in force."

The language of this section is plain, and indicates clearly to

my mind that the Legislature did not intend by section 7 to stop the running of the statute in cases where it already had commenced to run.    This was the view taken by this court in the case of Abernathy v. Dennis, 49 Mo. 468.    I think the statute of limitations was a good defense in this case, and there was no error in the court in refusing to strike it out.

The judgment must be affirmed.    Judge Wagner concurs.

### SEPARATE OPINION OF JUDGE BLISS.

I do not find myself able to agree with the majority of the court, and for the reason that the general provision, that "nothing contained in any statute of limitations shall extend to any lands given, granted, sequestered, or appropriated to any public, pious, or charitable use, or to any lands belonging to this State" (Wagn. Stat. 917, § 7), is not modified or controlled by section 32 (Wagn. Stat. 921), which limits the provisions of the chapter upon limitation to cases where the right of action has accrued since it took effect.    The chapter, in general, is the same as the act of 1855, and is a continuation of that act, and not a new enactment.    (Gen. Stat. 1865, ch. 224, § 5.)    But the above provision protecting public lands was original in the act of 1865, and hence has the same force and effect as though it were an independent act passed at that time.    Had there been no revision in 1865, so that the act of 1855 stood as in the revision of that year, can there be any doubt as to the effect of this new provision if adopted independently?    Would it not have repealed by necessary implication everything opposed to it?    Section 32 would have no connection with it, and could in no way qualify it.    I am confirmed in this opinion, not only because the clause is subsequent in time, but also because of its phraseology and object. It is general and sweeping in its terms.    It does not provide simply that this act or chapter shall not apply to any lands, etc., but contains the more extensive provision that "nothing contained in any statute of limitations shall extend," etc., "whether enacted now or heretofore, or whether embodied in that chapter or some other."    This sweeping language is rendered nugatory by the construction given, and I do not think that the Legisla-

ture could have intended to so restrict its operation. Its object is also defeated in part. The school lands of the State were being squatted upon and claimed by false titles, and no one in particular was interested in looking after them. Possession was therefore ripening into title, and one of the sources of our school funds was melting away. Owing to our short limitation and the frequent changes in county officers, or perhaps to their neglect or collusion, it became necessary to stop the loss from this cause. Hence this most beneficent provision, which takes these lands from the operation of "any" act of limitation. To give it full effect, it would stop the running of the statute when it had commenced, as well as prevent thereafter its beginning to run; and such seems to me to have been the legislative intention.