## BONSOR et al. v. MADISON COUNTY et al., Appellants.

### Division Two, May 14, 1907.

1. **SCHOOL LANDS: Title.** The counties never had title to school lands (sections 16) granted by the United States to the State of Missouri by the Act of Admission in 1820, for the use of the inhabitants of the townships in which the lands are located, but by article 2, chapter 122, Revised Statutes of 1899, county courts are made trustees to sell or lease such lands, collect the rents, etc.

2. ———: **Limitations.** The Statute of Limitations ran against the legal title of the State to school lands by the Revised Statutes of 1855 (art. 1, chap. 103, R. S. 1855); and where plaintiffs

and those under whom they claim paid the county for school land, and have been in the actual, open, notorious, continuous and hostile possession of it since 1853, claiming title thereto, they have the absolute title.

3. ———: **Parties Defendant.** Whether or not the judges of the county court and the sheriff should have been made parties defendant to a suit to have the title to school lands decreed to be in plaintiff and to enjoin the county, the court and the sheriff from selling them, is a question that could have been raised by demurrer or answer, and if not so raised it was waived.

4. ———: **Injunction to Restrain Sale: Cloud on Title.** An injunction, as an original and independent proceeding, will not lie to try title to real estate; nor does section 650, R. S. 1899, the statute in reference to quieting titles, authorize such a suit. But a court of equity has the power to prevent a cloud from being cast upon title; and if that is the purpose of the suit, and the petition charges that the county court and the sheriff are about to sell school lands belonging to plaintiffs, the injunction will be entertained; and they will be permitted to try the title, for such a sale would cast a cloud upon their title.

Appeal from Madison Circuit Court.—*Hon. Samuel Davis*, Special Judge.

AFFIRMED.

*E. D. Anthony* and *John C. Brown* for appellants.

(1) The court erred in overruling appellants' demurrer. Sec. 598, R. S. 1899; State ex rel. v. Kenemore, 155 Mo. 425; 1 High on Injunctions (2 Ed.), secs. 45, 46, 56, 325; Wilcox v. Walker, 94 Mo. 88; Crenshaw v. Cook, 65 Mo. App. 264; Bliss on Code Pleading (2 Ed.), secs. 210 and 213. (2) The pleadings do not show that Madison county, one of the appellants, has any claim to or interest in the land in controversy. Act of admission, sec. 6, p. 53, R. S. 1899; Ordinance of Acceptance, p. 55, R. S. 1899; secs. 8161, 8168, 8169, R. S. 1899. (3) Respondents' petition does not disclose any facts which if true would entitle them to equitable

relief. Wilcox v. Walker, 94 Mo. 88; Freeman v. Moffitt, 119 Mo. 302; Johnson v. Fluetsch, 176 Mo. 473; Jenney v. Spedden, 38 Mo. 395; State ex rel. v. Court, 47 Mo. 594; State ex rel. v. Vining, 147 Mo. 1; Miltenberger v. Court, 50 Mo. 172; Smith v. Johnson, 91 Mo. 13; Roden v. Helm, 90 S. W. 798.

*Robert A. Anthony, B. B. Cahoon, Sr., Moses Whybark, Madison R. Smith, David M. Tesreau and Thomas T. Fauntleroy* for respondents.

(1) The objection of non-joinder of parties defendant must be taken by demurrer or answer, and exceptions be duly saved by motion later; otherwise, it is waived. Franke v. St. Louis, 110 Mo. 516; Railroad v. Watson, 61 Mo. 57. (2) An act which tends to cast a cloud upon the title of real estate may be arrested or prevented by injunction. State ex rel. v. Wood, 155 Mo. 425; Bank v. City of Kansas, 73 Mo. 555. And the cloud may be removed by decree. De Bernardi v. McElroy, 110 Mo. 658. (3) While injunction as an original and independent proceeding does not lie to try title to real estate, yet it may be invoked as an incident to an action to try title. Smith v. Jamison, 91 Mo. 18. (4) Respondents (being in possession as alleged) could not bring ejectment, but could resort to this suit in equity. Wright's Heirs v. Christy's Heirs, 39 Mo. 125; Wynn v. Cory, 43 Mo. 301; Verdin v. St. Louis, 131 Mo. 79. (5) This action, under the allegations of respondents' petition, may be treated as an action based on section 650 (R. S. 1899) which is an action to quiet title, though not technically a suit in equity, and is designed to determine all the questions, whether of law or equity, relating to the respective titles of the parties, and to put at rest the controversy, as between the parties to the action. Wheeler v. Land Co., 193 Mo. 279; McCormick v. Parsons, 195 Mo. 91 (where an action under sec. 650 is

treated as a suit in equity); Ball v. Woolfolk, 175 Mo. 278; Gage v. Cantwell, 191 Mo. 706. (6) The action was properly brought against the county of Madison, the said county standing in the relation of a trustee of an express trust, the trust in the county being an active one. Mississippi County v. Vowels, 101 Mo. 225; Morrow v. Pike Co., 189 Mo. 622; State v. Bonner, 5 Mo. App. 18. (7) The allegations of the petition show that Berryman and his grantees have had open, adverse, notorious and continuous possession of the land in dispute, claiming same as their own, from 1860 to the present time. Under these circumstances all the Statutes of Limitation ran against the State, county and township, and vested absolute title in plaintiffs. Hendrickson v. Grable, 157 Mo. 42; Mississippi County v. Vowels, 101 Mo. 225. (8) Under the various provisions of article 2, chapter 122 (R. S. 1899) county courts are made trustees for the purpose of selling or leasing sixteenth section lands of the character in dispute, and of controlling and investing the moneys arising from such sales for the benefit of the inhabitants of the township in which such land is located. No other provisions are made for selling or leasing such lands. The only duty to be performed by a State officer is the absolute duty imposed on the Secretary of State to issue a patent when properly required by the county court. So far as the State's trust is concerned, it may be termed a mere dry trust. R. S. 1899, art. 2, chap. 122; R. S. 1899, secs. 9828, 9829, 9831, 9832, 9840; sec. 6, p. 53, R. S. 1899. (9) The statement in the petition that plaintiffs were the owners of the land in dispute, that defendants claimed some adverse interest and a prayer for an investigation and finding of title and general relief were sufficient, under section 650 (R. S. 1899) to authorize the court to admit evidence of adverse possession. Huff v. Land Co., 157 Mo. 65; Meriwether v. Love, 167 Mo. 514.

BURGESS, J.—The purposes of this suit seem to have been to have decreed and declared the legal and equitable title to a forty-one acre tract of land, described in the petition, to be vested in plaintiffs, and divested out of said county and county court, and to have the sheriff perpetually enjoined from proceeding with the sale of said land, under the order of said county court, and for general relief.

The petition upon which the case was tried, leaving off the formal parts, is as follows:

"Plaintiffs state that the said Katie Anderson Barclay and Shepard Barclay are husband and wife; that said Jennie Mallinckrodt and Edward Mallinckrodt are husband and wife; that said Georgiana Campbell Smith and John Campbell Smith are husband and wife; that said William O'Bannon is the duly elected, qualified and acting sheriff of the county of Madison in the State of Missouri; and that the said McFarland, Huffman and Hill are the judges of said county court of Madison county, Missouri.

"Plaintiffs further state that said O'Bannon as said sheriff of said county, acting and claiming to act under an alleged order of the county court of said county, made at its adjourned term of the regular November term, 1902, advertised in the Democrat-News, a weekly newspaper published in said county, that he would on Monday, the 23rd day of March, 1903, sell at public auction as school land the southeast quarter of the southeast quarter of section 16, in township 33 north of range 7 east, containing forty acres, situated in Madison county, Missouri; that said O'Bannon threatens at and before the filing of the petition herein that he would at said time proceed to sell said land as school land, and the said county court and said defendants named as its judges will upon said sale by said sheriff proceed to cause a patent to issue or a pretend-

ed conveyance to be made to the purchaser at said sale, of said land, unless restrained from so doing by order of the circuit court of said county; that any such sale or the making of any such patent or conveyance or the issue of any such patent to the purchaser at said sale will cloud and impair the title of plaintiffs to said real estate; that said land is of much value and is reputed and supposed by its owners to contain lead and other valuable minerals, and speculative or other purchasers may in spite of the facts hereinafter alleged bid and pay in excess of $1.25 per acre, for the claim they would acquire to said land, in order to secure some supposed right, title or interest therein to be conferred by such proposed sale; that such proposed sale or the making of a certificate of sale to the purchaser or the issuing a patent, pursuant thereto, will cloud, and cast a cloud upon the title of these plaintiffs to said real estate and will cause a multiplicity of suits thereafter to protect the rights of plaintiffs, and will do unto these plaintiffs great and irreparable injury and put them to great expense.

"Plaintiffs further allege that said land was once school land and as such once belonged to said section 16, township 33, range 7 east, in said county for school purposes, but that they through said county and through one James C. Berryman, now deceased, and the heirs, devisees and grantees of the said James C. Berryman, are now the sole and exclusive owners of all said real estate, and that said Berryman, his said heirs, devisees and grantees and these plaintiffs who claim title to said real estate from, under, through and by the said county of Madison and the State of Missouri, and through, under and by conveyances from the said Berryman, his heirs, devisees and legal representatives have been for more than thirty years since, to-wit, the year 1860, and they now are (under color and claim of title thereto) in the adverse, continuous, open, visible, noto-

rious, exclusive, hostile possession of all said real estate, claiming to own the same, and for thirty years the plaintiffs and those under whom they claim from said Berryman have separately and exclusively claimed and possessed the rights to the minerals and mines upon said property, and plaintiffs and their predecessors in title to said property have continuously claimed perfect title and have possessed said lands for more than thirty years last past, adversely, continuously, peaceably and exclusively against all the world and especially have plaintiffs so claimed against said county and State of Missouri, and against all who might assert any claim to said real estate or to any part thereof under said county; that plaintiffs (and those under whom they claim) have been under said color and claim of title thereto in the open, exclusive, continuous, hostile and adverse possession of all said real estate and have paid all State, county and other taxes yearly assessed thereon by said county and by its officers since, to-wit, the year 1860, and that the premises and their said adverse possesion of real estate confers and has long since conferred upon them full and complete title to said real estate, and that although plaintiffs cannot produce the formal deed or patent for said real estate issued or made to said James C. Berryman by said county or State, yet the legal as well as the equitable title to said real estate is by reason of the premises in these plaintiffs and in no other party; that said Berryman, more than thirty years ago, bought said land from said county and paid the lawful price therefor; that the said county and the said county court of said county have neglected and refused and now neglect and refuse (though often requested so to do by said Berryman and plaintiffs) to cause a deed or patent to be issued to said James C. Berryman, his heirs, devisees, legal representatives or assigns for said real estate or for any part thereof; but said county claims and asserts title thereto

for alleged school purposes adverse to plaintiffs, and in furtherance of such claim it is proceeding to have, and it proposes and intends to have, said land sold for school purposes as though said land belonged to said county in trust for the public school or for the benefit of the school funds or some of them of said county, when in fact said land is the exclusive property of the plaintiffs.

"Plaintiffs further allege that the said judges of the county court as members of said court are invested by law with a trust to dispose of school lands in the said township where said land is situate; and said court is the trustee of an express trust of the legal title to lands which in fact belong to the schools; but plaintiffs aver that the equitable title to the forty-acre tract above designated is in them, because said James C. Berryman more than twenty years ago bought the same and paid to said county court as trustee, as aforesaid, the full purchase price thereof; and said court in equity and good conscience ought to issue to plaintiffs, as the legal representatives of said Berryman, a patent for or certificate of purchase of said land, according to law; but not only does the said county court refuse so to do but it threatens to have said land resold as though it were yet school land, thereby to cast a cloud on the title of plaintiffs and to harass the plaintiffs in the enjoyment of their perfect legal title by adverse possession and occupancy and their equitable title thereto aforesaid.

"The premises considered, plaintiffs pray this honorable court for a decree declaring the complete legal and equitable title to said land to be fully vested in plaintiffs; and that said county and said county court be required to answer whether the alleged right and title of both in and to said forty-acre tract of real estate should not be divested out of both said county and said county court and invested in plaintiffs; that the court

will try the title to said real estate and invest the same in plaintiffs; and will perpetually enjoin the said sheriff from proceeding with said sale or any sale of said land under the aforesaid order of said county court; and that this court will grant unto plaintiffs all other relief to which they may be entitled and which equity and good conscience require, and will render judgment for costs of suit in their favor; and plaintiffs further pray that the interlocutory restraining order heretofore made herein may be continued and enforced by this court until the final hearing of the merits of this suit."

Defendants answered as follows:

"For answer to the amended petition of the plaintiffs filed in this cause, defendants admit that co-defendants, Henry B. McFarland, George W. Huffman and Henry Hill, are judges of the county court of Madison county, Missouri, and at the November term, 1902, of said county court they made and entered of record an order directing and commanding the sheriff of said Madison county, Missouri, to sell the real estate in controversy.

"Admit that co-defendant William O'Bannon is the sheriff of Madison county, Missouri, and that at the time this suit was instituted said defendant had advertised and was preparing to sell said real estate.

"Defendants also admit that the real estate in controversy was originally school land and that the legal title thereto was held by the State of Missouri, in trust for the benefit of the inhabitants of township 33 north, of range 7 east, and defendants deny each and every other averment, allegation and statement in said answer contained, and pray to be discharged with their costs.

"Defendants further answering said amended petition aver that the land in controversy is school land, that the equitable title thereto is vested in the inhabitants of township thirty-three north, of range seven

east, in Madison county, Missouri, and that the legal title to said property is vested in the State of Missouri, wherefore defendants pray the court that the injunction heretofore granted in this cause be dissolved and ask to be dismissed with their cost in this proceeding."

After hearing the evidence the.court rendered the following judgment and decree:

"Now comes Hon. Samuel Davis of the Fifteenth Judicial Circuit within and for the State of Missouri, who at the request of the regular judge of this court presided at the trial of this cause, and transacts the following business in said cause as follows and rendered the following decree in this cause:

"This cause came on to be heard at the adjourned September term, A. D. 1903, before the court, the Hon. Samuel Davis, Judge of the Fifteenth Judicial Circuit of Missouri at the request of the Hon. Robert A. Anthony, Judge of the Twenty-seventh Judicial Circuit of Missouri (of which the Madison County Circuit Court forms a part), and with the appearance and consent of all parties, sitting to try said cause, and the pleadings were thereupon read, the evidence in support thereof produced and argument of counsel made, and all and singular the matters and issues duly submitted to the court and taken and held under advisement until this the 2nd day of April, A. D. 1904, the 6th day of the March term of the court, at which time and whereupon the court makes the following findings and final decree:

"The court finds that Madison county is one of the defendants in said cause, and also that defendant William O'Bannon was at the time of the trial of said cause and is now sheriff of said county, and that defendants Henry B. McFarland, George W. Huffman and William Henry Hill are now and were at the institution of this suit the acting county judges of the said county, and further finds that the said Henry B. McFarland, George

W. Huffman and William Henry Hill, judges as aforesaid of the county court, were prior to or at the time of the institution of this suit, to-wit, April 30, 1903, proceeding to sell the land in dispute at public vendue, believing that it was part of the 16th section and belonging to the State school fund.

"The court further finds that the southeast quarter of section sixteen, township thirty-three, range seven east, containing forty acres more or less, is the description of the land in dispute as aforesaid, and the same land described in plaintiffs' petition, and was originally school land and part of the sixteenth section, and finds that Judge James C. Berryman, a resident of Madison county, and who has long since departed this life, purchased about the year 1853, said land from the State of Missouri, together with other State school lands, and paid therefor the statutory price of one dollar and twenty-five cents an acre, and finds further that the county and State authorities whose duty it was at the time on receiving payment thereof, to make and issue to Judge James C. Berryman for conveyance of the title thereto a proper patent, and finds that notwithstanding that such was the duty of said county and State officials and officers they and each of them failed and neglected to make said patent or other conveyance for such purchase and the court further finds that Judge Berryman in good faith, believing that he had obtained the title to said lands in the manner aforesaid, took possession thereof, fenced and cleared of said land fifteen or twenty acres; that he cut timber thereon for firewood, fencing and other purposes, and also cut and hauled cord wood and the same sold to the inhabitants of Fredericktown; and further finds that he and his grantees, devisees, and heirs, farmed and cleared portions of said land and the uncleared portion he used for pasturage and timber from about the year 1853 for thirty years and more thereafter; and finds further

that said land was treated and used by the said Judge Berryman as part of his homestead, his dwelling house and all outbuildings being within a few feet of the east and west line of said land situate on the northeast quarter of the southeast quarter of the section, township and range aforesaid.

"And the court further finds that the said land has been in open, notorious, continuous, hostile and actual possession of the said Judge Berryman, his heirs, devisees and grantees from about the year 1853 as aforesaid, up to the present time, and that said plaintiffs are now in the actual, open, notorious, continuous and hostile possession thereof.

"It is therefore ordered, adjudged and decreed that the title to the said land long since passed out of the county of Madison and the inhabitants thereof by the purchase of the said Judge James C. Berryman and that the said county of Madison, or the inhabitants of the township in which said land is situate in the county of Madison, have no title in and to said land for the reason that the same was sold to James C. Berryman as aforesaid, in the manner the law directed, and because of the actual, open, notorious, continuous and hostile possession thereof for fifty years or more by the said J. C. Berryman, his heirs, devisees and grantees, and therefore said county and the inhabitants of said township of said county have not any title thereto and have not had since about the year 1853.

"And it is further ordered, adjudged and decreed that the title, legal and equitable, to said land, be and the same is hereby firmly and forever settled and vested in them.

"And it is by the court further ordered, adjudged and decreed in order that the title to said land may abide in plaintiffs in peace and in no way be disturbed, that the said defendant Henry B. McFarland, George W. Huffman and William Henry Hill, judges as afore-

said, of the county court of Madison county, and their successors in office, be and the same are hereby forever perpetually restrained and enjoined from hereafter in any way undertaking to interfere with said land by selling or disposing of it in any manner whatever, and that said defendants, William O'Bannon, sheriff of said county, and his successors, are likewise restrained and enjoined from selling or undertaking to sell or in any manner dispose of said property under the orders of any county court of Madison county.

"And it is further ordered by the court that the clerk of this court on the recording of this decree in the circuit court record of the county of Madison, with convenient speed, shall make a certified copy thereof and the same deposit with the recorder of deeds of said county to be recorded in the land records thereof, which shall be the muniment of titles vesting as hereinbefore decreed said titles in the plaintiffs.

"And it is further adjudged by the court that it will be the duty of the Secretary of State on the presentation of a certified copy of this decree by the plaintiffs to issue to them or some of them a patent for said land as their interests shall appear.

"And it is further adjudged and decreed that plaintiffs recover off of defendants their costs of suit herein expended."

Defendants appeal to this court.

No bill of exceptions was filed in this cause, so that there is nothing before us for review except the record proper, which, in this case, includes the petition, answer, judgment and decree.

Defendants' first contention is that the petition fails to state a cause of action against Madison county.

The land in question is what is known as school land, granted by the United States to the State of Missouri by the Act of Admission, in 1820, for the use of the inhabitants of the townships in which located.

The counties never had titles to these lands; but by article 2, chapter 122, Revised Statutes of 1899, county courts are made trustees to sell or lease the lands, collect the rents, etc.

The proceeds of sales or leases made under said article 2 constitute a township fund, and the care and management of such fund is reposed in the county court, which shall cause correct accounts to be stated and kept (secs. 9828, 9829, R. S. 1899), and money so arising from sales and leases of school land constitute a school fund of the township, no part of the principal of which shall be expended for any purpose, but it shall be loaned by the county court, in the name of the county, for the use of the township to which it belongs (secs. 9831, 9832, R. S. 1899), and the township or schools have only the use of the moneys arising from sales of said lands, or a right to the benefit and use of the interest which may be earned by such funds. Until the lands are sold, however, the title remains in the State.

It is plain that none of these sections give the counties any title; but they do give to them the supervision of this class of school lands, which class, so far as the legal title is concerned, is entirely different from the swamp and overflowed lands which were granted to the State of Missouri by an act of Congress, and then donated by the State to the counties in which situated, the proceeds arising from the sale thereof to become a part of the public school fund of the county in which the land sold is situated. These lands are held in trust by such counties for their respective school funds. Not so with regard to the sixteenth sections, the title to which was always in the State after their grant by the United States Government, until patented by the State to the purchaser or purchasers.

But the petition alleges and the court found that

204 Sup—7

the plaintiffs and those under whom they claim title had been in the actual, open, notorious, continuous and hostile possession of the land, claiming title thereto, ever since 1853; so that, as the Statute of Limitations was then (art. 1, chap. 103, R. S. 1855), it ran against the legal title of the State, a county or a municipality, to lands held for public use. [Mississippi County v. Vowels, 101 Mo. 225; County of St. Charles v. Powell, 22 Mo. 525; Callaway County v. Nolley, 31 Mo. 393; Abernathy v. Dennis, 49 Mo. 468; School Directors v. Goerges, 50 Mo. 194; McCartney, Adm'x v. Alderson, 54 Mo. 320; Wickersham v. Woodbeck, 57 Mo. 59; Conn. Mut. Life Ins. Co. v. St. Louis, 98 Mo. 422; Hendrickson v. Grable, 157 Mo. 42.] It follows that plaintiffs' possession and of those under whom they claim had ripened into an absolute title for more than fifty years before the commencement of this suit.

Defendants contend that the county of Madison, William O'Bannon, sheriff of said county, and Henry B. McFarland, George W. Huffman and William Henry Hill, judges of the county court of said county, were improperly made defendants to this suit; but that objection could only have been raised by demurrer or answer, and as this was not done, the objection was waived. [Sec. 602, R. S. 1899; Railroad v. Watson, 61 Mo. 57; Franke v. St. Louis, 110 Mo. 516.]

While plaintiffs concede that injunction, as an original and independent proceeding, does not lie to try title to real estate, they insist that, under the allegations of their petition, it may be treated as an action based upon section 650, Revised Statutes 1899. But that statute furnishes no authority whatever for such a proceeding as this, which can only be upheld as a suit in equity to enjoin the sale of land, which sale would cast a cloud upon the legal title. Under such circumstances a court of equity will afford relief. In this case, under the judgment, the plaintiffs are the absolute own-

ers in fee of the land, and any sale that the defendants, judges of the county court, and the defendant sheriff of said county, might make as such could pass no title, and as the county, before the State lost its title to the land and the defendants and those under whom they claim acquired title thereto, was the trustee for this land and authorized to cause it to be sold by the sheriff of the county, any sale by it as threatened, as shown by the judgment, could but cast a cloud upon plaintiffs' title. "The jurisdiction and power of a court of equity to prevent a cloud being cast upon the title to real estate is as well established as is the jurisdiction and power to remove one already created." [Gardner v. Terry, 99 Mo. l. c. 526; Verdin v. St. Louis, 131 Mo. 26.]

For these considerations the judgment is affirmed. *Gantt, J.,* concurs; *Fox, J.,* not sitting.