MAUD ENGLE et al., Appellants, v. WORTH COUNTY.

Division One, June 2, 1919.

1. **PARTITION: Land Subject to Homestead: Theory of Trial.** Where respondent in the trial court, by its answer, joined in the prayer for a partition and sale of the property, and the case was tried on the theory that it was subject to partition and sale, respondent cannot be heard to contend on appeal that the land is not subject to partition because burdened with the widow's homestead. The theory of the trial cannot be shifted on appeal.

2. **LIMITATIONS: Deed of Trust: Payment of Interest After Maturity: Sureties.** Under the statute which provides that if an action on the note is barred an action on the deed of trust securing it is likewise barred, the note is not barred either as

to the maker or sureties if by its terms it contemplates that interest will be paid annually after maturity and the interest is paid by the maker up to within ten years before suit is brought, nor is the deed of trust barred as to the maker.

3. ———: ———: ———: **Separate Mortgage as Security.** Notwithstanding a bond to the county for moneys borrowed from the school fund and a deed of trust securing the same are separate contracts, and the bond is signed by the principal and two sureties, and the deed of trust by other persons, if the note is kept alive by the payment of annual interest and the deed of trust and the bond contemplate that interest is to be annually paid, and they refer to each other, the payment of interest by the maker of the note prevents the Statutes of Limitations running as to the deed of trust, although paid without the knowledge and consent of its makers, for by the deed of trust they agreed that the interest would be paid annually. .

4. **SCHOOL FUND: Deed of Trust on Land.** The county can look to the land embraced in a deed of trust given to secure a loan from the school fund. Both by the usual deed of trust and the law, its makers bind their interest in the land to the payment of the debt.

Appeal from Worth Circuit Court.—*Hon. John M. Dawson*, Judge.

AFFIRMED.

*J. E. Engle* and *Dubois & Miller* for appellants.

(1) The school fund mortgage as to the interest of appellants in the lands sought to be partitioned was barred by the Statute of Limitations long prior to the institution of this suit. Regan v. Williams, 88 Mo. App. 577; Maddox v. Duncan, 143 Mo. 621; Corbyn v. Brokmeyer, 84 Mo. App. 649; Clute v. Clute, 197 N. Y. 439, Frase v. Lee 152 Mo. App. 566; McCollum v. Boughton, 132 Mo. 625. (2) The appellants herein are liable only to have the property covered by the school fund mortgage sold after defendant, Worth County, had exhausted its remedy against the principal and sureties on the bond. McCollum v. Boughton, 132 Mo. 625. (3) In any event, recovery in this case on the school fund indebtedness should have been limited to the penalty in the bond,

$200, with interest from time of filing answer of Worth County, on February 19, 1917. Worth County on the school fund indebtedness alleged herein is claiming $384, being $200 principal with $184 interest. The amount of the penalty provided in the bond is $200. Clearly the position of the county is wrong and absolutely so in claiming $384. If entitled to foreclose and enforce the mortgage herein at all, it can in any event be only for the amount of the bond, $200, with a small amount of interest accrued after the filing of its answer herein on February 19, 1917. 27 Am. & Eng. Ency. Law (2 Ed.),453; Brighton Bank v. Smith, 12 Allen (Mass.), 243, 90 Am. Dec. 144; Thomas Laughlin Co. v. Surety Co., 114 Fed. 627.

*James Anderson*, Prosecuting Attorney, for respondent.

GRAVES, J.—Appellants in their brief have fairly outlined the facts of the case. In fact there is no contest as to the facts, the case having been submitted upon an agreed statement of facts. We quote a part of their statement thus:

"This is an action in partition among the heirs at law of one Thomas Walton, deceased, including his widow, Mary C. Walton, his sons Charles T. and Elihu J. Walton, his daughters, Amanda Eighmy and Oda M. Eighmy, his granddaughters, Maud Engle and Zella Killion, and his great grandchildren, Arlyn Kirkpatrick and Helen Kirkpatrick. Both the grandchildren and great grandchildren aforesaid are descendants of one Martha Kirkpatrick, a daughter of said Thomas Walton.

"Thomas Walton died intestate in Worth County, Missouri, during the year 1878. His estate was duly probated in the probate court of said county and fully and finally settled. His daughter Martha Kirkpatrick died in the year 1907 and her son, A. V. Kirkpatrick died in the year 1915. The plaintiffs herein, Maude Engle

and Zella Killion, are daughters of said Martha Kirkpatrick and defendants Arlyn Kirkpatrick and Helen Kirkpatrick are children of her son, A. V. Kirkpatrick, deceased. The plaintiffs Maude Engle and Zella Killion and defendants Amanda Eighmy and Oda M. Eighmy are married women; defendants Helen Kirkpatrick and Arlyn Kirkpatrick are minors of tender years, and defendant Mary C. Walton, widow of Thomas Walton, deceased, is old and infirm and was, in November, 1915, adjudged insane by the county court of Worth County, Missouri, and is now confined to the Insane Asylum at St. Joseph, Missouri.

The land affected by this suit is described as Lots Seven and Eight of Block Sixteen in Grant City, Missouri. It was owned in fee simple by Thomas Walton at the time of his death, at which time its value was less than $1500, when it was occupied by himself and family as a homestead. Under the statute then in force, defendant Mary C. Walton became the owner of a life estate or homestead in said land, with remainder to the children and heirs at law of said Thomas Walton, deceased.

"There is no contention in this appeal as to the various interests of the widow and other heirs at law of said Thomas Walton, deceased, in the property above described or as to the title thereto. The sole question presented to this court is as to the validity of a certain school fund mortgage covering said land executed on the 29th day of December, 1896, to secure the payment of a school-fund bond, executed on that date by Mary C. Walton as principal and J. W. Watson and J. B. Dawson, as sureties, in favor of defendant, Worth County, Missouri, for the benefit of the school fund of said county, said bond being due one year from the date thereof.

"The court will understand and it is a conceded fact in this case that the $200 named in said bond was borrowed by Mary C. Walton, the life tenant alone; that at the time she so borrowed it she executed her

bond therefor, with J. W. Watson, and J. B. Dawson as sureties thereon; that the owners of the fee in said property, to-wit: the children of said Thomas Walton, all of whom were then living, never at any time received the said $200 so borrowed by said Mary C. Walton, or any part thereof; that said children never at any time signed or in any way executed the said bond; that they never in any way bound themselves personally for the payment thereof; that so far as the borrowed money itself and the bond executed therefor are concerned the said children of said Thomas Walton, deceased, are in no wise liable in any manner whatsoever.

"At the time she, the said Mary C. Walton, borrowed said money, and with said J. W. Watson and J. B. Dawson, as sureties, executed her bond therefor, she, the said Mary C. Walton, together with her children Martha Kirkpatrick, Elihu J. Walton, Charles T. Walton, Amanda Eighmy and Oda M. Eighmy executed their school fund mortgage to Worth County, Missouri, covering the above described lands, to secure said school-bond so executed by Mary C. Walton, J. W. Watson and J. B. Dawson as aforesaid."

The contest is between Worth County and the plaintiffs and the defendants, other than Worth County. A guardian *ad litem* was appointed for the insane widow and the minor defendants. The widow, the principal in the school-fund bond, made payments of interest thereon up to and including December 31, 1908. By the agreed facts these payments were made without the knowledge or consent of the other makers of the deed to trust. It is conceded that one of the sureties on the bond is worth $25,000 and that the insane widow is insolvent. The present suit was instituted January 29, 1916, and the answer of defendant Worth County sets up the school-fund bond and deed of trust aforesaid, and closes with the following prayer for relief:

"Wherefore, this defendant, Worth County, Missouri, prays that a sale of said real estate be made, as in plaintiff's petition prayed; that out of the pro-

ceeds of such sale said above-mentioned school-fund indebtedness be paid, and for such other and further relief as shall be meet and just in the premises.''

An interlocutory judgment in partition was entered, and in such judgment we find (among other things) the following:

''Wherefore it is considered, ordered and decreed by the court that said school-fund indebtedness in the sum of $384 is a valid and subsisting lien against the real estate herein described, and against and upon, first, the interest of defendant Mary C. Walton therein, with the residue thereof a valid and subsisting lien upon the interests of plaintiffs and the other defendants herein according to their respective interests in said property; that said real estate be sold by the sheriff of Worth County, according to law, to the highest bidder for cash in hand; that out of the proceeds of said sale, said school-fund indebtedness to Worth County, Missouri, be first paid as herein found, and after paying all costs and expenses incurred in making said sale, including fee for abstract of title to same, that the remainder of the proceeds arising from such sale be partitioned and divided among and between the parties, plaintiffs and defendants herein, according to their respective interests as herein set forth, and the said sheriff of Worth County, is hereby further ordered and directed to make said sale at the south front door of the court house in the city of Grant City, Worth County, Missouri, and report said sale to this court, and account for and pay over, according to law and the order of this court, to the parties entitled thereto, all sums of money coming into his hands and in such sale.''

The contention of appellants is that the payment of interest on the school fund bond after its alleged maturity (which was one year from its date) did not keep alive the lien of the deed of trust, and inasmuch as they specially invoked the Statute of Limitations in their pleadings, the decree so far as the parties were

concerned (excepting the widow) should have been against Worth County.

I. In respondent's (Worth County's) brief there is a suggestion that the land is not subject to partition, because of it being the homestead of Mary C. Walton, the widow. Whether there is substance in this contention need not be decided. Worth County is in no position to urge the question here. This, because such was not the theory in the trial below. By answer Worth County joined in the request for the partition and sale, and asked that her deed of trust be declared a first lien upon the proceeds of sale. The whole proceeding below was not one adverse to the idea of partition. On the contrary, the trial was on the theory that partition was proper, but that it could not be had in kind (owing to the number of interests) and a sale in partition should be ordered. It is trite law that the theory *nisi* cannot be shifted here upon appeal.

*Theory of Trial.*

II. The issue tried below in this case was whether or not the lien of the deed of trust had been lost under our statute which provides that if an action on the note is barred an action on the deed of trust or mortgage is likewise barred. [Sec. 1892, R. S. 1909.]

*Limitations.*

The deed of trust in this case was executed after the Act of 1891 (of which Section 1892, supra, was a part); hence the statute applies in this case, if the facts make it applicable. [Stockton v. Teasdale, 212 Mo. 611.]

Nor can there be any question that the payment made upon the bond by Mrs. Mary C. Walton obviated the running of the statute so far as she and her sureties on the bond are concerned. In other words, these payments by her left this bond as between Worth County and the signers of the bond a live instrument at the date of the instant suit. Neither she nor her sureties could successfully invoke the Statute of Limitations as to the obligation created by the bond. [Clinton County to use v. Smith, 238 Mo. 118, and cases cited therein.]

But the question urged by appellants is that, although it be granted that the payment on the bond by Mrs. Walton left such bond as a live instrument as against her and her sureties upon the bond, yet as appellants were not obligors on the bond, they are not bound by the payments, and as to them the bond is barred by the Statute of Limitations. They urge that the bond and deed of trust are two separate contracts, and they not being parties to the bond are not bound by the acts of Mrs. Walton in making these payments. This question we take next.

III. If we grant that the bond and deed of trust are two separate contracts as contended for by appellants, this does not settle the controversy. We must then go to the terms of the deed of trust and see what its obligations are in respect to the bond. This is material and we quote from the deed of trust thus:

Mortgage Agreement.

' "Whereas, the said Mary C. Walton, on the 29th day of December, A. D. 1896, borrowed from the said county, the sum of——dollars belonging to the Capital School Fund of said county, for which said sum of borrowed money the said Mary C. Walton, as principal, with John W. Watson and J. B. Dawson, as securities, has executed her bond to the said county, bearing date the 29th day of December, A. D. 1896, in which said bond the said principal and securities agree and bind themselves to pay to the said county, for the use and benefit of the principal of the Capital School Fund, on or before the 29th day of December, A. D. 1897, the said sum of borrowed money with interest thereon from the date of said bond until paid, at the rate of eight per cent per annum, *said interest to be paid annually, on the first day of August of each and every year,* until the whole debt shall be paid off and discharged.

"Now therefore, if the *said principal and securities* shall well and truly pay or cause to be paid, the said sum of money borrowed, and all the interest thereon, according to the tenor and effect of said bond, then this

deed shall be void, and it shall be released at the proper cost and expense of the said parties of the first part. But should default be made in the payment of the principal or interest, or any part thereof, at the time when they shall severally become due and payable, according to the tenor and effect of the said bond, the then acting sheriff of the said county shall have power to and may, without suit on this deed of mortgage, proceed and sell the property herein conveyed and mortgaged, first giving twenty days' public notice of the time, terms and place of said sale.''

We have italicized a clause with reference to interest in the quotation, supra. From this it appears that the parties to the deed of trust contemplated and agreed that interest payments were to be made annually. Not only so, but the deed of trust contemplated partial payment of the principal. The deed of trust refers specifically to the bond, and thereby incorporates its terms into the deed of trust. The bond contains this recital:

''The conditions of this bond are: That, Whereas, the said Mary C. Walton, principal, has this day borrowed from said county the sum of two hundred dollars, belonging to the Principal Capitol School, which said sum of money the said principal and securities agree and promise to pay to said county for the use and benefit of the principal of the Capitol School Fund, on or before the 29th day of December, A. D. 1897, with interest thereon, from the date hereof until paid, at the rate of eight per cent per annum, *said interest to be paid annually on the 1st day of each and every year*, until the whole debt shall be fully paid off and discharged.''

From this it appears that the parties to the bond contemplated that it might run longer than the one year, and by the due reference to the bond in the deed of trust it must be said that the terms of the bond must be read into the deed of trust. So that in both ways we have this provision in the deed of trust (1) by reference to the bond, and (2) by special recital in the deed of trust. So that at the very signing of the deed

of trust the signers thereof contracted and agreed that either the principal or sureties on this bond should have the right to pay interest on the bond annually ''on the first day of August of each and every year.'' In signing the deed of trust they so understood and agreed and the right thereby became fixed. No subsequent knowledge or consent to payments were required. They had signed the deed of trust with the understanding that such could be done, and the life of the bond thereby protected from the Statute of Limitations. The life of the bond having been extended by these payments (expressly authorized by appellants in their deed of trust) the appellants are not released by the Statute of Limitations as to deeds of trust i. e. by Section 1892, Revised Statutes 1909. These payments made on the bond became the acts of appellants, because they by the deed of trust authorized them. The cases relied upon by appellants are not appropos to this situation. We may concede that the deed of trust, so far as the property of appellants is concerned, is in the nature of additional security for the debt, but when they agree (as the terms of their obligation show) that the life of the bond may be extended by annual payments of interest, they are in no position to invoke the Statute of Limitations when the county seeks to enforce its lien upon the property of its proceeds, at any time within ten years from the last of such payments. The difference between this case and those relied upon by appellants in their brief, is, that here we have the contract of appellant authorizing the continued life of the bond by payments of interest or partial payments of principal. There was no error in holding that Section 1892, Revised Statutes 1909, did not relieve appellants.

IV. By the execution of the deed of trust the appellants bound their interests in the land to the payment of this debt upon default of payment by the obligors in the bond. The county can look

**Land for Debt.** to the land for the debt. The terms of the deed of trust so say. Likewise the law so says.

[McCullum v. Boughton, 132 Mo. 601, et seq.]    Finding no error in the record we affirm this judgment.    All concur, except *Woodson, J.,* absent.