For the reasons stated I would affirm the judgment.

**STATE of Missouri ex rel. Harold P. ROBB, Director, Division of Mental Health, State of Missouri, et al., Relators,**

v.

**John H. POELKER et al., Respondents.**
**No. 58563.**

Supreme Court of Missouri,
En Banc.

Oct. 15, 1974.

Rehearing Denied Nov. 12, 1974.

Leland B. Curtis, Gen. Counsel, Dan Chatfield, Dept. of Revenue, Asst. Gen. Counsel, Dept. of Revenue, Jefferson City, for relator.

Jack L. Koehr, City Counselor, John J. Fitzgibbon, Associate City Counselor, St. Louis, for respondents.

FINCH, Judge.

This is an original proceeding in mandamus wherein certain officials of the State of Missouri as relators seek to compel officials of the City of St. Louis as respondents to budget, appropriate and pay sums allegedly due under the provisions of § 202.863 RSMo 1969, V.A.M.S.[1] for care and maintenance in state institutions of indigent patients from the City of St. Louis. We issued our alternative writ of mandamus to which respondents have filed their return. We now order issuance of a peremptory writ of mandamus.

Beginning with the fiscal year commencing May 1, 1971, and continuing to the present, respondents have failed and refused to budget, appropriate and pay sums concededly due the State for care of indigent patients from the City of St. Louis. By their return respondents admit that the City has a statutory duty to pay for such patients pursuant to § 202.863 and state that they have never denied and do not now deny that the City owes a just debt to the State for such maintenance and care.

Relators assert in their petition that two statutory provisions obligate respondents to make payment to the State. First, they

---

1. The pertinent portions of § 202.863 are as follows:

"1. Patients admitted to the facilities for the mentally ill or retarded of the division of mental health under the provisions of this law shall be classified as private, state, or county patients as determined by the application of the standard means test provided by section 202.330. Whenever in this section the term 'county court' is used, it shall mean 'probate court' in the case of residence in the city of St. Louis.

\* \* \* \* \*

"3. If any person is admitted to a state facility who is unable to pay for care and treatment, as determined by the application of the standard means test, pursuant to the provisions of section 202.330, the superintendent of the facility shall notify the county court of the county of residence of the fact, and the care and treatment of the patient from the date of admission shall be charged to the county at the rate prescribed for county patients. If the county court is in possession of information tending to show that the superintendent's determination was in error, this information will be provided the facility for redetermination of private or county patient stat-

us under the standard means test. The decision of the superintendent shall be final and appeal may be taken to the circuit court of Cole county in the manner provided by chapter 536, RSMo.

"4. The county of residence of a county mentally ill or retarded inpatient shall pay semiannually in cash, in advance, for the support of such patient a sum fixed by the division, not to exceed three percent of the actual cost to the state less whatever amount will be paid by or in behalf of the patient. Upon the death or removal of a county patient from the facility the superintendent shall refund to the county the amount that may remain unexpended for his care and treatment. The county of residence shall pay for other than inpatient service quarterly after the service is rendered three percent of the actual cost to the state less whatever amount has been paid by or in behalf of the patient. For the purpose of raising the sums of money required for the care of county patients, the county courts of the several counties are authorized and required to discount and sell their warrants whenever it becomes necessary.

\* \* \* \* \*

rely on the obligation to pay imposed by § 202.863. Secondly, they rely on the provisions of the County Budget Law, §§ 50.525 to 50.750 RSMo 1969, V.A.M.S. Respondents assert that the County Budget Law is applicable only to statutory classes of counties (first, second, third and fourth class counties) and is not applicable to the City of St. Louis, which is a constitutional charter city, but they make no such contention with reference to § 202.863.

■ We have concluded that we need not reach and consider whether the County Budget Law is applicable, for the reason that § 202.863 clearly imposes a mandatory, non-discretionary duty on respondents to pay the State the sums due under the formula therein provided. That statute establishes a complete procedure for determining the amount to be paid by the City of St. Louis as well as other counties of the state. The City may provide factual information to aid in making certain determinations and it may appeal from certain determinations, but it has no right to decide the amount due. It has no discretion to decide upon the amount to be paid or the sum to be budgeted therefor. Section 202.863(4) provides that the City *shall* pay the amount due pursuant to the formula provided. Under these circumstances, what this court said in Gill v. Buchanan County, 346 Mo. 599, 142 S.W.2d 665, 668 (1940) is pertinent:

"* * * Certainly such annual obligations imposed upon the county by the Legislature would be valid from the first of the year, if within the limits of the constitutional provisions fixing the county's authority to raise revenue during each year to pay them; and no part of any such obligation could become invalid merely because the county court decided to incur other obligations for different purposes during the year. To so hold would amount to recognition of authority in the county court to ignore statutes, and to say that it could make its own choice as to whether it would follow valid acts of the Legislature or use all of its revenue for different purposes * * *.

"* * * The action of the Legislature in fixing salaries of county officers is in effect a direction to the county court to include the necessary amounts in the budget. * * * Certainly such obligations imposed by the Legislature were intended to have priority over other items as to which the county court had discretion to determine whether or not obligations concerning them should be incurred. They must be considered to be in the budget every year because the Legislature has put them in and only the Legislature can take them out or take out any part of these amounts * * *."

While the County Budget Law was discussed in the Gill case, the court's decision was not based on requirements established therein. The language quoted from Gill relies on general obligations imposed by the General Assembly on Buchanan County and the duty of the county to budget and pay those obligations. Application of the court's reasoning in Gill requires us to find a similar obligation on the part of the City of St. Louis to budget, appropriate and pay the statutory obligations imposed by § 202.-863.

Such conclusion is supported by the decision in the more recent case of State ex rel. Williamson v. County Court of Barry County, 363 S.W.2d 691 (Mo.1963). In that case this court considered a mandamus proceeding to compel issuance of warrants to cover the balance of a statutory salary due the deputy circuit clerk. After quoting with approval from Gill v. Buchanan County, *supra,* the court affirmed a judgment ordering issuance of a writ of mandamus to compel issuance of such warrants. See also State ex rel. Hall v. Bauman, 466 S.W.2d 177 (Mo.App.1971).

We conclude that mandamus is the appropriate remedy to compel performance by respondents of the obligations imposed on the City of St. Louis by § 202.863. Ac-

cordingly, we order the issuance of a peremptory writ of mandamus directed to all respondents herein enjoining upon them the obligation to perform their respective obligations in budgeting, appropriating, and paying those sums due from the City of St. Louis to the State of Missouri under the provisions of § 202.863. This includes the sum of $855,217.10 heretofore certified to be the amount due for the period ending June 30, 1973, plus those additional sums which are due under the provisions of § 202.863 for periods subsequent to June 30, 1973.

As a part of its return to the alternative writ of mandamus issued herein, respondents, after answering the various allegations in the petition for writ of mandamus, undertook by way of additional return to file a petition for writ of mandamus on behalf of the City of St. Louis against the Governor, the state treasurer, the director of revenue, the director of the division of accounting and all members of the House of Representatives and Senate of the State of Missouri. That petition alleged that during the period from 1940 to 1963 the State of Missouri became indebted to the City of St. Louis for persons cared for in the insane and tuberculosis hospitals of the City of St. Louis, that certain sums were paid by the State to the City during that period but that the sum of $1,671,642.26 was left unpaid. The petition sought to offset a portion of said sum against the claims asserted by the State against the City and then sought a writ of mandamus ordering payment of the additional amount due after the asserted offset is made.

■ Relators have made several responses to the foregoing attempt on the part of respondents, one of which is that the claims are more than ten years old and are barred by limitation under the provisions of § 516.120(2) RSMo 1969, V.A.M.S. Since it is clear that the asserted claims are barred by the statute of limitations and are unenforceable, we need not reach or consider the other defenses thereto asserted by relators. Accordingly, the prayer of respondents for relief under their further return to relator's petition for mandamus is denied.

Peremptory writ of mandamus ordered to issue against respondents in accordance with the views expressed in this opinion.

MORGAN, HOLMAN and HENLEY, JJ., concur.

DONNELLY, C. J., dissents in separate dissenting opinion filed.

SEILER, J., dissents in separate dissenting opinion filed.

BARDGETT, J., dissents and concurs in separate dissenting opinion of SEILER, J.

DONNELLY, Chief Justice (dissenting).

In State on inf. Barker ex rel. Kansas City v. Kansas City Gas Co., 254 Mo. 515, 531, 163 S.W. 854, 857, (1914), this Court stated the rule to be "that 'whether a writ of mandamus shall be issued, is in every case a matter resting largely in the discretion of the court, and depends upon all the surrounding facts and circumstances.' "

In view of the facts and circumstances in this case, and particularly those noted by Judge Seiler, I would quash the alternative writ as improvidently issued.

I respectfully dissent.

SEILER, Judge (dissenting).

There is something basically wrong when the state is permitted to exact compliance from St. Louis with the statutes requiring St. Louis to pay for indigent patients in state mental institutions, yet at the same time the state is not required to comply with statutes which require it to pay St. Louis for the support of charity patients in the city tuberculosis and city mental hospitals.

According to St. Louis, the state is obligated to pay it $735,621.54 for care and maintenance of insane patients at Malcolm A. Bliss Mental Health Center and St. Louis Chronic Hospital, as required by Sec. 202.670, RSMo 1949 and 1959, and $935,020.72 for support of charity patients in Robert Koch Hospital, as required by Sec. 205.450, RSMo 1949 and 1959. The city asserts (and this is not denied) it has made efforts to induce past governors and the general assembly to pay this indebtedness, but without success. The state does not deny the debt. The state, however, says the statute of limitations bars the offset which the city attempts to assert.

I do not believe the statute of limitations was intended by the legislature to apply to public rights, where one part of the state is dealing with another part of the state. In Reorg. Sch. Dist. R–1 v. Reorg. Sch. Dist. R–III, 360 S.W.2d 376 (Mo.App.1962), one school district sought to assert the statute of limitations against another school district in a dispute over boundaries and taxes. The trial court held the statute had run against plaintiff's action, but this was reversed on appeal, the court saying, 360 S.W.2d 1. c. 381: ". . . [W]e are cited to Section 516.010 relating to limitation of actions for recovery of land, and to Sections 516.110 and 516.120 relating to personal actions. Section 516.360 provides that these limitations shall apply to the state. This action is neither for the recovery of real property or a personal action within the statute. *The action is to enforce a public right, and it is therefore not within the statutes mentioned.* . . ." (emphasis supplied).

The court cited in support of its ruling the case of State ex rel. Wyatt v. Cantley, 325 Mo. 67, 26 S.W.2d 976 (banc. 1930). There the claim of a county collector of revenue for county taxes was held not to be barred by failure to file the claim within the time prescribed by statute for filing claims against insolvent banks taken over by the state finance commissioner. The court held that statutes of limitations do not apply to the state unless clearly so provided, the reasoning being that the public right or title should not be lost by the neglect or wrong of the agents of the state.

In City of Osawatomie v. Board of Com'rs of Miami County, 78 Kan. 270, 96 P. 670 (1908) the court held that the statute of limitations did not run against the city in an action to recover taxes collected by the county which should have been turned over to the city. The court put the decision on the basis that the statute did not apply to public rights or property held upon a public trust, quoting from a West Virginia decision, Ralston v. Weston, 46 W.Va. 544, 33 S.E. 326, as follows (96 P. 1. c. 671): ". . . So, statutes of limitations, which are made to apply to the state, do not apply to the people or their public rights. But they only apply to the state in the same cases that they apply to individuals. The entry upon, or recovery of, lands held for sale, suits or bonds, contracts, evidences of debt, or for torts—all these, though the state is a party, are subject to bar. As to all such things there is no reason why the state should have any longer time than an individual. Such is not the case with the right of taxation, the right of eminent domain, the right to use the public highways, and other rights, which pertain only to the sovereignty of the people. None of these can ever be lost by the negligence of the public servants, who have no power of disposal over them in anyway whatever, except according to the express will of the people."

The court also quoted with approval from Simplot v. Chicago, etc. Ry. Co. (C. C.) 16 F. 350, as follows (96 P. 1. c. 671): "The true rule is that when a municipal corporation seeks to enforce a contract right, or some right belonging to it in a proprietary sense, or, in other words, when the corporation is seeking to enforce the private rights belonging to it, as distinguished from rights belonging to the public, then it may be defeated by force of the statute of limitations, but in all cases wherein the corporation represents the

public at large, or the state, or is seeking to enforce a right pertaining to sovereignty, then the statute of limitations, as such, cannot be made applicable. In the latter cases the courts may apply the doctrine or principle of an estoppel, and by means thereof, where justice and right demand it, prevent wrong and injury from being done to private rights."

In conclusion, the Kansas court said as follows, 96 P. l. c. 672: "The present controversy involves no element of private contract. It does not concern the vindication of any private right. It is between public officers or public bodies with respect to the performance of a public duty, in which the people of the state at large have at least an indirect interest. It is not affected by mere general provisions of the statute, and no statutory limitation is made to apply to it either in express terms or by necessary implication."

I believe Sec. 516.360 RSMo, V.A.M.S. has reference to cases where the state brings an action, for its benefit, against a private individual, seeking to collect, for example, back taxes. In such a situation, the statute of limitations applies against the state. Other examples are where the state is seeking to forfeit the license of a corporation, State ex rel. Attorney General v. Arkansas Lumber Co., 260 Mo. 212, 169 S.W. 145 (1914), or to a suit by a city on a special tax bill, City of St. Louis v. Newman, 45 Mo. 138 (1869), or to a suit by the state to recover delinquent income taxes, State v. Dalton, 353 Mo. 307, 182 S.W.2d 311 (1944), or antitrust conspiracy proceedings brought by the state against a private corporation, State ex inf. Eagleton v. Stupp Bros. Bridge & Iron Co., 380 S.W. 2d 382 (Mo. banc 1964). None of these is the situation before us.

In V. S. DiCarlo Const. Co. v. State, 485 S.W.2d 52 (Mo.1972) we pointed out how unfair it was to let the state have the benefit of a contract and then at the same time assert that a private citizen could not maintain suit against it on the contract. We held that the general assembly did not intend a contract lacking in mutuality, that to hold otherwise would be to sanction "the highest type of governmental tyranny."

I would apply the same principles of equity and fair dealing here. If the state expects St. Louis to live up to its public obligations, it should also live up to its public obligations to St. Louis and come into court with clean hands, as mandamus partakes of the nature of equity to the extent that the relator must come with clean hands, State ex rel. Hyde v. Jackson County Medical Soc., 295 Mo. 144, 243 S.W. 341, 342 (1922). The statutes in question are to a great extent reciprocal: the city must pay the state a certain sum for its patients in a state facility and the state must pay the city a certain sum for taking care of charity patients in city facilities who would otherwise have to be taken care of elsewhere. The statutory language in both instances as to what each shall receive from the other is direct, to the point, and admits of no exceptions. There is no indication the legislature intended the state to escape these obligations by invoking the statute of limitations. The money involved here is all public money, yet the way this case turns out, St. Louis is being shorted the public money due it, while the state is not.

I would send this case back to the circuit court for a hearing and determination of the offset asserted by St. Louis and would instruct the trial court to award appropriate relief to whichever side is entitled to recover after the accounts are balanced.

## ON MOTION FOR REHEARING

### PER CURIAM.

Respondents' motion for rehearing strenuously asserts that our holding that their counterclaim is barred by limitation is contrary to previous decisions in this state. In view of the fact that we simply cited § 516.120(2) in support of that holding, we have concluded to amplify our opinion on that point.

Chapter 516, RSMo 1969, V.A.M.S., consists of §§ 516.010 through 516.370 which establish and govern various statutes of limitations. Sec. 516.360 thereof provides as follows:

"The limitations prescribed in sections 516.010 to 516.370 shall apply to actions brought in the name of this state, or for its benefit, in the same manner as to actions by private parties."

Under the provisions of § 516.120(2), limitations are made applicable to all actions upon liabilities created by statute. As respondents' brief recognizes, the claims which respondents sought to assert against the state in their tendered counterclaim were based upon §§ 202.670, 202.680, 205.430 and 205.450, RSMo 1949 and RSMo 1959. Therefore, if § 516.360 is applicable to subdivisions of the state, or if the common law rule of "Nullum tempus occurrit regi" is inapplicable to political subdivisions of the state, the limitation of § 516.120(2) bars respondents' claims under said sections of the statute.

In Emery v. Holt County, 345 Mo. 223, 132 S.W.2d 970 (1939), this court considered the question of whether the statute of limitations applied to a school fund mortgage. The court pointed out that by statute (the predecessor of § 516.360) this state had abolished the maxim "Nullum tempus occurrit regi". The court called attention to the case of State ex inf. Attorney General v. Arkansas Lumber Co., 260 Mo. 212, 169 S.W. 145, 168 (1913) where the court ruled "that this section makes applicable to the state every general limitation in our law."

The court then addressed the question of whether statutes of limitation were applicable to political subdivisions of the state and in that connection said, l. c. 971 of 132 S.W. 2d:

"Under the common law the maxim 'Nullum tempus occurrit regi' did not apply to political subdivisions of the state. It applied only to the state. County of St. Charles v. Powell, 22 Mo. 525, 66 Am.Dec. 637. In Callaway County v.

Nolley, 31 Mo. 393, 397, we ruled as follows:

" 'Here then was a lot whose legal title was vested in Callaway county, in trust for the inhabitants of the town of Fulton. Callaway county was as competent twenty years ago to bring an action as it was at the time of the institution of this suit. In fact it is nothing more than a body politic, acting as trustee for the inhabitants of the town of Fulton. It is subject to the statute of limitations, as was held in the case of the County of St. Charles v. Powell, 22 Mo. 525 [66 Am.Dec. 637]. Property held by individuals or bodies politic in trust is as much subject to the statute of limitations as that owned by individuals'.

"Other cases so ruling are School Directors of St. Charles Twp. v. Goerges et al., 50 Mo. 194; Flinn v. Gillen, 320 Mo. 1047, loc. cit. 1053, 10 S.W.2d 923, 926; Engle v. Worth County, 278 Mo. 295, 213 S.W. 70; Missouri Township v. Farmers Bank, 328 Mo. 868, 42 S.W.2d 353; Nall v. Conover, 223 Mo. 477, 122 S.W. 1039, and Bonsor v. Madison County [204 Mo. 84, 102 S.W. 494], supra."

The argument was made that it would be against public policy to permit public funds to be lost by negligence or misfeasance of officers and that for this reason the limitation provision should not apply. In overruling that contention, the court said, l. c. 972 of 132 S.W.2d:

"The legislative enactments of this state and the decisions of the courts construing the same determine the public policy of the state. In this situation the argument here made as to public policy should be addressed to the legislature."

■ Respondents cite and rely on the cases of Reorganized School District R–I v. Reorganized School District R–III, 360 S.W.2d 376 (Mo.App.1962) and State ex rel. Wyatt v. Cantley, 325 Mo. 67, 26 S.W. 2d 976 (1930) as authority for the proposition that limitations do not apply in actions

**584**

to enforce a public right and that, hence, the city's claim is not barred. We disagree. In Cantley, the court held that the state was not barred by the statutory limitation imposed on claims filed in the liquidation of an insolvent bank. The basis for that decision, as clearly disclosed by the court's opinion, was that statutes of limitation do not apply on actions brought by the state unless the statute of limitations is expressly made applicable to the state. The court cited and relied upon State ex rel. Zeigenhein v. Tittmann, 119 Mo. 661, 24 S.W. 1032 for that proposition. In Zeigenhein the court pointed out that the common law rule was that time did not run against the king and that this would be true unless statutorily enacted limitations were made expressly applicable to the state. The statute of limitations specifying a period of four months for filing claims in the liquidation of an insolvent bank contained no provision whereby that limitation was made applicable to the state and there was no general statute making it applicable. In contrast, the legislature by § 516.360 has made § 516.120(2) expressly applicable to governmental action. Hence, the ruling in Cantley has no application. In the Reorganized School District case cited above, the Court of Appeals undertook to follow the decision in Cantley. It recognized the existence and effect of § 516.360 but concluded that the nature of the claim asserted was such that it did not fall within the terms of any of the statutes of limitation created in Chapter 516. The case does not even purport to overrule or cast doubt on earlier decisions holding statutes of limitation applicable to political subdivisions of the state or cases construing and applying the statute now designated as § 516.360.

It is clear that the asserted counterclaim of respondents is barred by § 516.120(2). See also State v. Dalton, 353 Mo. 307, 182 S.W.2d 311 (1944). Accordingly, respondents' motion for rehearing is overruled.

DONNELLY, C. J., and SEILER and BARDGETT, JJ., dissent from Per Curiam.